Cynthia L. Filla (SBN 184638)
Cynthia.Filla@jacksonlewis.com
Connie L. Chen (SBN 275649)
Connie.Chen@jacksonlewis.com
Paul J. Cohen (SBN 293797)
Paul.Cohen@jacksonlewis.com
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2500
Los Angeles, California  90017-5408
Telephone:  (213) 689-0404
Facsimile:   (213) 689-0430

Attorneys for Defendants
DT EMPLOYER LLC; DT MANAGEMENT LLC;
DOUBLETREE EMPLOYER LLC; HILTON EMPLOYER INC.;
HILTON HOTEL EMPLOYER LLC; EMBASSY SUITES
EMPLOYER LLC; CURIO EMPLOYER LLC; HAMPTON INNS
EMPLOYER LLC; HLT CONRAD DOMESTIC EMPLOYER LLC;
HLT CONRAD DOMESTIC LLC; CONRAD EMPLOYER LLC;
WALDORF=ASTORIA EMPLOYER LLC; HOMEWOOD SUITES
EMPLOYER LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| ERICKA KRAUT, individually, and on behalf of all others similarly situated current and former employees of Defendants,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>DT EMPLOYER LLC, a California limited liability company; DT MANAGEMENT, LLC,  DOUBLETREE EMPLOYER, LLC, a California limited liability company; HILTON EMPLOYER, INC., a California limited liability company; HILTON HOTEL EMPLOYER , LLC, a California limited liability company; EMBASSY SUITES EMPLOYER, LLC, a California limited liability company; CURIO EMPLOYER, LLC, a California limited liability company; HAMPTONS INNS EMPLOYER, LLC, a California limited liability company; HLT CONRAD | **CASE NO.: 5:22-cv-349**<br><br>[San Bernardino County Superior Court Case No. CIVSB2132004]<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441**<br><br>[Filed concurrently with Civil Case Cover Sheet; Declarations of Cynthia L. Filla, James Smith and Rose Walz; Corporate Disclosures Statement; Notice of Interested Parties; Notice of Related Cases; and Proof of Service]<br><br>Complaint Filed:  December 28, 2021 |

1

DOMESTIC EMPLOYER, LLC, a
California limited liability company; HLT
CONRAD DOMESTIC, LLC, a California
limited liability company; CONRAD
EMPLOYER , LLC, a California limited
liability company; WALDORF=ASTORIA
EMPLOYER, LLC, a California limited
liability company; HOMEWOOD SUITES
EMPLOYER, LLC, a California limited
liability company; a California limited
liability company; and DOES 1 through
100, inclusive,

                    Defendants.

**TO THE CLERK OF THE U.S. DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendants DT Employer LLC, DT Management LLC, Doubletree Employer LLC, Hilton Employer Inc., Hilton Hotel Employer LLC, Embassy Suites Employer LLC, Curio Employer LLC, Hampton Inns Employer LLC, HLT Conrad Domestic Employer LLC, HLT Conrad Domestic LLC, Conrad Employer LLC, Waldorf=Astoria Employer LLC, and Homewood Suites Employer LLC (collectively hereafter referred to as "Defendants") remove the above-entitled action to this Court from the Superior Court of the State of California, County of San Bernardino pursuant to 28 U.S.C. § 1441. Defendants invoke this Court's original jurisdiction under 28 U.S.C. § 1332(d) (the Class Action Fairness Act). Defendants submit this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff Ericka Kraut ("Plaintiff") and without conceding that Plaintiff has pled claims upon which relief can be granted. This removal is based on the following grounds:

**PROCEDURAL BACKGROUND.**

1.     On December 28, 2021, Plaintiff filed an unverified Class Action Complaint against Defendants in the Superior Court of the State of California for the County of San Bernardino entitled *ERICKA KRAUT, et al v. DT EMPLOYER, LLC, et al.*, Case

No. CIVSB2132004, which sets forth the following eight causes of action:  (1) failure to provide meal periods and pay meal period premiums at correct rates; (2) failure to provide rest periods and pay rest period premiums at correct rates; (3) failure to pay all wages due during employment, including minimum and straight time wages; (4) failure to pay overtime; (5) failure to provide accurate wage statements and maintain accurate payroll records; (6) failure to pay all wages due to terminated employees; (7) unfair business practices (California Business & Professions Code, §17200 et seq.); (8) civil penalties pursuant to the Labor Code Private Attorneys General Act of 2004 (Cal. Labor Code, § 2698 et seq.) (the "Complaint"). As stated therein, the Complaint is brought as a class action on behalf of Plaintiff and all current and former non-exempt employees of Defendants that worked for Defendants in the State of California for a period of time within the four (4) years preceding the filing of the Complaint. A true and correct copy of the Summons and Complaint is attached as **Exhibit A** to the Declaration of Cynthia L. Filla ("Filla Decl.") filed concurrently herewith. (Filla Decl. at ¶ 3.)

2.     On January 10, 2022, counsel for Plaintiff emailed counsel for Defendants the Summons, Complaint, and related court documents including a Civil Case Cover Sheet, Certificate of Assignment, and ADR Packet. A true and correct copy of the Civil Case Cover Sheet, Certificate of Assignment, and ADR Packet is attached to the Filla Decl. as **Exhibit B**. (*Id.* at ¶ 4.)

3.     On January 27, 2022, counsel for Defendants executed a Notice and Acknowledgment of Receipt ("NAR") for each named defendant and emailed the NARs to counsel for Plaintiff.  Plaintiff subsequently filed the NARs with the Court. True and correct copies of the executed NARs are attached to the Filla Decl. as **Exhibit C**. (*Id.* at ¶ 5.)

4.     Service of the Summons and Complaint was effectuated on January 27, 2022—the date counsel for Defendants signed the NARs on Defendants' behalf and emailed the NARS to counsel for Plaintiff.  CCP §415.30(c); *see also Murphy Bros., Ins. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) (holding that mere receipt of

complaint does not trigger running of time to remove; the removal deadline is calculated based on the official service date).

5.      On January 14, 2022, Judge David Cohn of the Superior Court of California, County of San Bernardino, issued an Initial Case Management Conference Order which the Court Clerk served on Plaintiff's counsel. True and correct copies of the Initial Case Management Conference Order and the Clerk's Certificate of Service are attached to the Filla Decl. as **Exhibit D**. (*Id.* at ¶ 6.)

6.      On February 25, 2022, Defendants filed an Answer to the Complaint in San Bernardino County Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses. The Answer was served on Plaintiff on February 24, 2022.  A true and correct copy of Defendants' Answer is attached to the Filla Decl. as **Exhibit E**. (*Id.* at ¶ 7.)

7.      As of the date of this filing, **Exhibits A-E** to the Filla Decl. constitute all of the pleadings that have been filed or served in this action, and no further proceedings have occurred in the state court. (Id. at ¶ 8.)

## **REMOVAL IS TIMELY.**

8.      This Notice of Removal has been filed within thirty (30) days after service of the Summons and Complaint was effectuated on January 27, 2022. (Id. at ¶ 3.)  Therefore, it has been filed within the time period mandated by 28 U.S.C. § 1446(b).  *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received.").

## **VENUE**

9.      This action was filed in the Superior Court in and for the County of San Bernardino.  Thus, pursuant to 28 U.S.C. § 1441(a), Defendants are removing this action to the United States District Court for the Central District of California as the district "embracing the place where [the] action is pending."

/ / /

DEFENDANTS' NOTICE OF REMOVAL OF
ACTION TO FEDERAL COURT PURSUANT
TO 28 U.S.C. §§ 1332, 1441(b)

## REMOVAL BASED ON CLASS ACTION FAIRNESS ACT

10.     Removal of this action is proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332 *et seq.*  Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

11.     In addition, CAFA provides for jurisdiction in the district courts only where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities.  28 U.S.C. § 1332(d)(5).

12.     As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, the matter in controversy – based on the allegations in the Complaint – exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a state different from one of the Defendants.  *See* 28 U.S.C. §§ 1332(d) and 1453.  Furthermore, none of the Defendants are a State, State official, or other governmental entity.

## A.     The Putative Class Contains More Than 100 Members.

13.     CAFA provides that the district courts shall not have jurisdiction over class actions where "the number of members of all proposed plaintiff classes in the aggregate is less than 100."  28 U.S.C. § 1332(d)(5).

14.     Here, Defendants' records identify in excess of 18,000 individuals who are or were employed by Defendants as non-exempt employees in the State of California between December 28, 2017 (four years prior to the filing of the Complaint) and the present (collectively referred to herein as "Putative Class Members"; the period between December 28, 2017 and the present is referred to herein as the "Class Period").  (Declaration of Rose Walz ("Walz Decl.") at ¶ 6.)  Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

**B.    None Of The Named Defendants Are Government Entities.**

15.    None of the Defendants are a State, a State official, or any other governmental entity.

**C.    Minimal Diversity Is Satisfied Under CAFA.**

16.    The standard for establishing diversity of citizenship under CAFA is different than diversity jurisdiction under 28 U.S.C. § 1332(a)-(c).  CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A); *see also Benko v. Quality Loan Serv. Corp.,* 789 F.3d 1111, 1116 (9th Cir. 2015); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.,* 602 F.3d 1087, 1090-91 (9th Cir. 2010) (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

17.    Citizenship of the parties is determined by their citizenship status at the action's commencement.  *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

18.    For individuals, citizenship is determined by a person's domicile.  *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986).  "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

19.    Plaintiff is, and was at all times relevant to this action, a resident of the State of California. (Filla Decl. at ¶ ¶ 3, 9 **Exhibit A** at ¶ 4.)  Accordingly, for purposes of removal under CAFA, Plaintiff is a citizen of the State of California.

20.    For diversity purposes, a corporation is considered a citizen of any state by which it is incorporated and of the state where it has its principal place of business. (28

U.S.C. § 1332(c)(1)). With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010). Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities. *Id*. A corporation can only have one "nerve center." *Id.* at 93-94. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weight corporate functions, assets, or revenues in each state. *Id*.

21. For diversity purposes, a limited liability company is deemed to be a citizen of any state in which any member of the company is a citizen. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

22. Defendant Hilton Employer Inc. is incorporated under the laws of the State of Delaware. (Declaration of James Smith ("Smith Dec.") at ¶ 4). At all relevant times, Hilton Employer Inc.'s headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id.*) Defendant Hilton Employer Inc. controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102. (*Id.*) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from its headquarters. (*Id.*)

23. Defendant DT Employer LLC is duly formed under the laws of the State of Delaware. (*Id.* at ¶ 5.) At all relevant times, Defendant DT Employer LLC's headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id.*) Defendant DT Employer LLC controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102. (*Id.*) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from this office. (*Id.*) Its members also meet at its headquarters in McLean, Virginia. (*Id.*) DT

Employer LLC's sole member is Hilton Employer Inc. (*Id.* at ¶ 6.)

24.    Defendant DT Management LLC is duly formed under the laws of the State of Arizona. (*Id.* at ¶ 7.) At all relevant times, Defendant DT Management LLC's headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id.*) Defendant DT Management LLC controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102. (*Id.*) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from this office. (*Id.*) Its members also meet at the headquarters in McLean, Virginia. (*Id.*) DT Management LLC's sole member is Doubletree Hotels LLC. (*Id.* at ¶ 8.)

25.    Doubletree Hotels LLC is duly formed under the laws of the State of Arizona. (*Id.*) At all relevant times, Doubletree Hotels LLC's headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia.  (*Id.*) Doubletree Hotels LLC controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102. (*Id.*)  Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from this office. (*Id.*) Its members also meet at the headquarters in McLean, Virginia. (*Id.*) Doubletree Hotels LLC's sole member is Doubletree LLC. (*Id.*)

26.    Doubletree LLC is duly formed under the laws of the State of Delaware. (*Id.* at ¶ 9.) At all relevant times, Doubletree LLC's headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia.  (*Id.*) Doubletree LLC controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102. (*Id.*)  Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from this office. (*Id.*) Its members also meet at the headquarters in McLean, Virginia. (*Id.*) Doubletree LLC's sole member is Promus Hotels Parent LLC. (*Id.*)

27.    Promus Hotels Parent LLC is duly formed under the laws of the State of Delaware. (*Id.* at ¶ 10.) At all relevant times, Promus Hotels Parent LLC's headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id.*) Promus Hotels Parent LLC controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102. (*Id.*) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from this office. (*Id.*) Its members also meet at the headquarters in McLean, Virginia. (*Id.*) Promus Hotels Parent LLC's sole member is Hilton Domestic Operating Company Inc. (*Id.*)

28.    Hilton Domestic Operating Company Inc. is incorporated under the laws of the State of Delaware. (*Id.* at ¶ 11.) At all relevant times, Hilton Domestic Operating Company Inc.'s headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id.*) Hilton Domestic Operating Company Inc. controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102. (*Id.*) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from this office. (*Id.*)

29.    Defendant Doubletree Employer LLC is duly formed under the laws of the State of Delaware. (*Id.* at ¶ 12.) At all relevant times, Defendant Doubletree Employer LLC's headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id.*) Defendant Doubletree Employer LLC controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102. (*Id.*) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from this office. (*Id.*) Its members also meet at the headquarters in McLean, Virginia. (*Id.*) Doubletree Employer LLC's sole member is Hilton Employer Inc. (*Id.* at ¶ 13.)

/ / /

30.    Defendant Hilton Hotel Employer LLC is duly formed under the laws of the State of Delaware. (*Id.* at ¶ 14.) At all relevant times, Defendant Hilton Hotel Employer LLC's headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id.*) Defendant Hilton Hotel Employer LLC controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102.   (*Id.*) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from this office. (*Id.*) Its members also meet at the headquarters in McLean, Virginia. (*Id.*) Hilton Hotel Employer LLC's sole member is Hilton Employer Inc. (*Id.* at ¶ 15.)

31.    Defendant Embassy Suites Employer LLC is duly formed under the laws of the State of Delaware. (*Id.* at ¶ 16.) At all relevant times, Defendant Embassy Suites Employer LLC's headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id.*) Defendant Embassy Suites Employer LLC controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102.   (*Id.*) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from this office. (*Id.*) Its members also meet at the headquarters in McLean, Virginia. (*Id.*) Embassy Suites Employer LLC's sole member is Hilton Employer Inc. (*Id.* at ¶ 17.)

32.    Defendant Curio Employer LLC is duly formed under the laws of the State of Delaware. (*Id.* at ¶ 18.) At all relevant times, Defendant Curio Employer LLC's headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id.*) Defendant Curio Employer LLC controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102. (*Id.*) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from this office. (*Id.*) Its members also meet at the headquarters in McLean, Virginia. (*Id.*) Curio

Employer LLC's sole member is Hilton Employer Inc. (*Id.* at ¶ 19.)

33.     Defendant Hampton Inns Employer LLC is duly formed under the laws of the State of Delaware. (*Id.* at ¶ 20.) At all relevant times, Defendant Hampton Inns Employer LLC's headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id.*) Defendant Hampton Inns Employer LLC controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102.   (*Id.*) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from this office. (*Id.*) Its members also meet at the headquarters in McLean, Virginia. (*Id.*) Hampton Inns Employer LLC's sole member is Hilton Employer Inc. (*Id.* at ¶ 21.)

34.     Defendant HLT Conrad Domestic Employer LLC is duly formed under the laws of the State of Delaware. (*Id.* at ¶ 22.) At all relevant times, Defendant HLT Conrad Domestic Employer LLC's headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id.*) Defendant HLT Conrad Domestic Employer LLC controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102.   (*Id.*) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from this office. (*Id.*) Its members also meet at the headquarters in McLean, Virginia. (*Id.*) HLT Conrad Domestic Employer LLC's sole member is Hilton Employer Inc. (*Id.* at ¶ 23.)

35.     Defendant HLT Conrad Domestic LLC is duly formed under the laws of the State of Delaware. (*Id.* at ¶ 24.) At all relevant times, Defendant HLT Conrad Domestic LLC's headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id.*) Defendant HLT Conrad Domestic LLC controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102.   (*Id.*) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and

coordinate its activities from this office. (*Id.*) Its members also meet at the headquarters in McLean, Virginia. (*Id.*) HLT Conrad Domestic LLC's sole member is HPP International LLC (*Id.* at ¶ 25.)

36.    HPP International LLC is duly formed under the laws of the State of Delaware. (*Id.*) At all relevant times, HPP International LLC's headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id.*) HPP International LLC controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102.  (*Id.*) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from this office. (*Id.*) Its members also meet at the headquarters in McLean, Virginia. (*Id.*) HPP International LLC's sole member is HPP Hotels USA LLC (*Id.*)

37.    HPP Hotels USA LLC is duly formed under the laws of the State of Delaware. (*Id.* at ¶ 26.) At all relevant times, HPP Hotels USA LLC's headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id.*) HPP Hotels USA LLC controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102.  (*Id.*) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from this office. (*Id.*) Its members also meet at the headquarters in McLean, Virginia. (*Id.*) HPP Hotels USA LLC's sole member is Hilton Domestic Operating Company Inc. (*Id.*)

38.    Defendant Conrad Employer LLC is duly formed under the laws of the State of Delaware. (*Id.* at ¶ 27.) At all relevant times, Defendant Conrad Employer LLC's headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id.*) Defendant Conrad Employer LLC controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102. (*Id.*) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from this

office. (*Id.*) Its members also meet at the headquarters in McLean, Virginia. (*Id.*) Conrad Employer LLC's sole member is Hilton Employer Inc. (*Id.* at ¶ 28.)

39.     Defendant Waldorf=Astoria Employer LLC is duly formed under the laws of the State of Delaware. (*Id.* at ¶ 29.) At all relevant times, Defendant Waldorf=Astoria Employer LLC's headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id.*) Defendant Waldorf=Astoria Employer LLC controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102.   (*Id.*) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from this office. (*Id.*) Its members also meet at the headquarters in McLean, Virginia. (*Id.*) Waldorf=Astoria Employer LLC's sole member is Hilton Employer Inc. (*Id.* at ¶ 30.)

40.     Defendant Homewood Suites Employer LLC is duly formed under the laws of the State of Delaware. (*Id.* at ¶ 31.) At all relevant times, Defendant Homewood Suites Employer LLC's headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id.*) Defendant Homewood Suites Employer LLC controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102.   (*Id.*) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from this office. (*Id.*) Its members also meet at the headquarters in McLean, Virginia. (*Id.*) Homewood Suites Employer LLC's sole member is Hilton Employer Inc. (*Id.* at ¶ 32.)

41.     Defendants are unaware of any other defendant having been named or served with the Complaint in this action. The only other defendants named in the Complaint are fictitious parties identified as "DOES 1 through 100." It is not necessary for DOES 1 through 100 to join in this removal as they have been sued under fictitious names, have not been served or received the Summons or the FAC, and, under 28 U.S.C.

§ 1441(b)(1), are disregarded for purposes of removal and are not proper parties in this Court.

42.    Given the above, minimal diversity exists under CAFA because at least one Putative Class Member (Plaintiff) was, at the time this action was commenced – and is still believed to be – a citizen of the State of California, while at least one Defendant was – and still is – a citizen of a State other than California.  28 U.S.C. § 1332(d)(2).

**D.    The Amount In Controversy Exceeds $5,000,000 Based On A Plausible Reading Of The Allegations Of The Complaint.[1]**

43.    Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case …. Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly ….").

44.    In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp. 993, 1001 (C.D. Cal. 2002)

---

[1]    Defendants deny each and every allegation set forth by Plaintiff in the Complaint and deny that Plaintiff or Putative Class Members are entitled to any compensatory or statutory damages, injunctive relief, restitution, civil penalties, attorneys' fees, or any other relief. Defendants also deny that this action can proceed as a class or representative action. Notwithstanding the above, removal of this action is proper given that removal is based on the allegations asserted in the Complaint.

(*citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim")).  Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied.  *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843 n.1 (9th Cir. 2002) (*citing Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969)).

45.    Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation."  *Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007).   Rather, a defendant seeking removal must prove by a preponderance of the evidence that the aggregate amount in controversy exceeds the jurisdictional minimum.  *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); *see Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."); *Arias v. Residence Inn*, 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in controversy, which "need not be proven").

46.    In *Dart Cherokee Basin Operating Co., LLC v. Owens*, the United States Supreme Court held that, whereas here, the complaint is silent as to whether the amount in controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold."  135 S. Ct. 547, 554 (2014) (emphasis added).  Following *Dart*, the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional

elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Salter v. Quality Carriers, Inc.*, 2020 U.S. App. LEXIS 28364, *6-7 (9th Cir. Sept. 8, 2020) (citations and internal quotation marks omitted). Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" *Adams v. Toys 'R' US – Delaware, Inc.*, 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) *quoting Dart*, 135 S. Ct. at 554. On the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal. *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183-84 (9th Cir. 2015).

47.     Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. *See Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line*, No. 14-CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

/ / /

48.    A removing defendant is "not required to comb through its records to identify and calculate the exact frequency of violations."  *Oda v. Gucci America, Inc.*, No. 2:14-cv-7468-SVW (JPRx), 2015 U.S. Dist. LEXIS 1672, at *12 (C.D. Cal. Jan. 7, 2015); *see Sanchez v. Russell Sigler, Inc.*, No. CV 15-01350-AB (PLAx), 2015 U.S. Dist. U.S. LEXIS 55667, at *5 (C.D. Cal. Apr. 28, 2015). ("[A] removing defendant is not obligated to research, state and prove the plaintiff's claims for damages.") (citation omitted).  *See also LaCross v. Knight Transport. Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable"); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy").  The ultimate inquiry is what amount is put "in controversy" by Plaintiff's Complaint, not what defendants will actually owe.  *LaCross*, 775 F.3d at 1202 (explaining that courts are directed "to first look to the complaint in determining the amount in controversy") (citation omitted).

49.    Here, as detailed below, Defendants have both plausibly alleged and established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 and the Court has jurisdiction pursuant to CAFA.  Plaintiff's claims place an aggregate amount in controversy exceeding $5,000,000, as follows:

a.    There are over 18,000 individuals who are or were employed by Defendants as non-exempt employees in the State of California during the Class Period. (Walz Decl. at ¶ 6.)

b.    Defendants DT Management LLC, DT Employer LLC, and Doubletree Employer LLC collectively employ or previously employed in excess of 2,000 non-exempt employees at six DoubleTree hotel properties in California during the Class Period, including at the DoubleTree Ontario where Plaintiff was employed.  (*Id.* at ¶ 7.) (The Putative Class Members that are employed or were employed by DT Management

17

LLC, DT Employer LLC, and Doubletree Employer LLC are hereafter referred to as the "DoubleTree Employees".) More than 1,250 of the DoubleTree Employees are former employees. (*Id.* at ¶ 8.)

      c.    The majority of DoubleTree Employees are full time employees that typically work eight hours per day, five days per week. (*Id.* at ¶ 10.)

      d.    An average year for a full-time employee contains approximately 250 workdays and 50 workweeks. A four-year period, therefore, contains a total of approximately 1,000 workdays and 200 workweeks.

      e.    Defendants conservatively estimate that DT Management LLC, DT Employer LLC, and Doubletree Employer LLC employed at least 500 full time non-exempt employees at any given time during the Class Period.[2] Accordingly, a conservative estimate of the total workweeks worked by the DoubleTree Employees during the Class Period is 100,000 (500 employees x 200 workweeks).

      f.    The hourly rate of pay of the DoubleTree Employees that are currently employed by DT Management LLC, DT Employer LLC, and Doubletree Employer LLC ranges from $15 per hour to approximately $50 per hour. (*Id.* at ¶ 11.)

      g.    Plaintiff's first cause of action alleges that Defendants failed to authorize and permit Plaintiff and the Putative Class Members to take adequate, timely, and duty-free meal periods. (Complaint ¶ 30.) Under Labor Code section 226.7, an employee is entitled to one hour of pay for each workday in which a compliant meal period is not provided. Conservatively estimating that Plaintiff will attempt to show that Putative Class Members missed only one meal period per week, and conservatively assuming that the DoubleTree Employees were earning only $15 per hour, this claim alone places in controversy at least **$1,500,000** ($15 x 1 missed meal period x 100,000 workweeks) as to the DoubleTree Employees only.

---

[2] This is a highly conservative estimate given that Defendants currently have over 700 active employees. (Walz Dec. at ¶ 9.)

h.      Plaintiff's second cause of action alleges that Defendants failed to authorize and permit Plaintiff and the Putative Class Members to take timely, duty-free rest breaks. (Complaint ¶ 37.) Under Labor Code section 226.7, an employee is entitled to one hour of pay for each workday in which a compliant rest break is not provided. Conservatively estimating that Plaintiff will attempt to show that Putative Class Members missed only one rest period per week, and conservatively assuming that the DoubleTree Employees were earning only $15 per hour, this claim alone places in controversy at least **$1,500,000** ($15 x 1 missed rest break x 100,000 workweeks) as to the DoubleTree Employees only.

i.      Plaintiff's third cause of action alleges that Defendants failed to compensate Plaintiff and the Putative Class Members for all non-overtime hours worked. (Complaint ¶ 44.) Conservatively estimating that Plaintiff will attempt to recover one hour of unpaid non-overtime wages per week for all Putative Class Members, and conservatively assuming that the DoubleTree Employees were earning only $15 per hour, this claim alone places in controversy at least **$1,500,000** ($15 x 1 hour x 100,000 workweeks)[3] as to the DoubleTree Employees only.

j.      Plaintiff's fourth cause of action alleges that Defendants failed to compensate Plaintiff and the Putative Class Members for all overtime hours worked. (Complaint ¶ 53). Under Labor Code section 510, overtime work must be compensated at one and one-half times the regular rate of pay for an employee. Conservatively estimating that Plaintiff will attempt to recover one hour of overtime wages per week for all Putative Class Members, and conservatively assuming that the DoubleTree Employees were earning only $15 per hour, this claim alone places in controversy at least **$2,250,000** ($22.50 overtime rate [$15 x 1.5][4] x 1 hour x 100,000 workweeks) as to the DoubleTree Employees only.

---

[3] This also does not account for liquidated damages that Plaintiff may attempt to recover pursuant to Labor Code section 1194.2.

[4] For convenience and ease of calculation, Defendants are assuming that the hourly overtime rate is 1.5 times $15. Defendants deny that they failed to compensate Plaintiff and the Putative Class Members for all overtime hours worked at 1.5 times the "regular rate of pay" pursuant to Labor Code Section 510.

k.    Plaintiff's fifth cause of action alleges that Defendants knowingly and intentionally failed to provide Plaintiff and the Putative Class Members with accurate wage statements in compliance with Labor Code section 226. (Complaint ¶ 62.) Section 226(e) provides that an employee suffering injury as a result of an employer's failure to provide accurate wage statements may recover the greater of (a) actual damages; or (b) fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each subsequent violation, not to exceed an aggregate penalty of four thousand dollars ($4,000). The DoubleTree Employees have been paid on either a bi-weekly basis or semi-monthly basis throughout the Class Period. (Walz Dec. at ¶ 12.) Assuming that each of the approximately 2,000 DoubleTree Employees received 10 noncompliant wage statements during the applicable timeframe, this claim alone places in controversy at least **$1,900,000** ([$50 x 1 initial violation x 2,000 employees] + [$100 x 9 subsequent violations x 2,000 employees]) as to the DoubleTree Employees only.

l.    Plaintiff's sixth cause of action alleges that Defendants failed to pay Plaintiff and the Putative Class Members who are no longer employed by Defendants compensation due upon termination as required by California Labor Code sections 201 and 202. (Complaint ¶ 69.) Pursuant to Labor Code section 203, an employee who is not timely paid all wages due upon termination may recover a penalty equal to the employee's daily rate of pay for each day the wages are improperly withheld, for up to 30 days. Given the number of DoubleTree Employees whose employment was terminated during the Class Period (at least 1,250), and conservatively assuming that the DoubleTree Employees were earning only $15 per hour, this claim alone places in controversy at least **$4,500,000** ($15 x 8 hours x 30 days x 1,250 former employees) as to the DoubleTree Employees only.

m.    Accordingly, the amount placed in controversy by Plaintiff's Complaint conservatively exceeds **$13,150,000 *for just the DoubleTree Employees.***

n. This does not include the damages that are potentially recoverable by the approximately 16,000 Putative Class Members that were employed by any of the named Defendants at other hotel properties in California.

o. This amount could also be considerably greater if one were to assume a higher violation rate and a higher average hourly rate earned by the Putative Class Members.

p. Additionally, the above estimates of the amount in controversy reach the jurisdictional threshold without including the unspecified amount of attorneys' fees that Plaintiff seeks. In determining whether a complaint meets the amount in controversy threshold for a removal under 28 U.S.C. § 1332, a court may also consider the value of claims for attorney's fees. *See Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) (attorney's fees may be taken into account to determine jurisdictional amount); *see also Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (holding the amount in controversy may include attorney's fees recoverable by statute).

q. For the foregoing reasons, and without conceding or admitting to the underlying merit of Plaintiff's claims, the amount in controversy easily surpasses the $5,000,000 jurisdictional threshold required under CAFA.

## NOTICE TO ALL PARTIES AND STATE COURT

50. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiff's counsel and filed with the Clerk of the San Bernardino County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

/ / /

/ / /

/ / /

/ / /

/ / /

DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441(b)

1

## <u>CONCLUSION</u>

2       Based on the foregoing, Defendants hereby remove the above-captioned action

3 from the San Bernardino County Superior Court to this Court based on CAFA

4 requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453), and respectfully request that

5 this Court retain jurisdiction for all further proceedings.

6

7 Dated:  February 25, 2022                    JACKSON LEWIS P.C.

8

9

10                                    By:   /s/Cynthia L. Filla
                                          Cynthia L. Filla
11                                        Connie L. Chen
                                          Paul J. Cohen
12
                                          Attorneys for Defendants
13                                        DT EMPLOYER LLC; DT MANAGEMENT
                                          LLC; DOUBLETREE EMPLOYER LLC;
14                                        HILTON EMPLOYER INC.; HILTON
                                          HOTEL EMPLOYER LLC; EMBASSY
15                                        SUITES EMPLOYER LLC; CURIO
                                          EMPLOYER LLC; HAMPTON INNS
16                                        EMPLOYER LLC; HLT CONRAD
                                          DOMESTIC EMPLOYER LLC; HLT
17                                        CONRAD DOMESTIC LLC; CONRAD
                                          EMPLOYER LLC; WALDORF=ASTORIA
18                                        EMPLOYER LLC; HOMEWOOD SUITES
                                          EMPLOYER LLC
19

20

21

22

23

24

25

26

27

28

22

4871-5798-1200, v. 2

PROOF OF SERVICE